IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSVALDO PUMBA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-2082 |
| | : | |
| v. | : | |
| | : | |
| KEITH KOWAL, LILIAN THOMAS, | : | |
| JENNIFER VENDEL, JOHANA | : | |
| SHARPE, and RN Elizabeth, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                                    July 18, 2022

The *pro se* plaintiff, a county inmate, has sought leave to proceed *in forma pauperis* in this action under 42 U.S.C. § 1983 and Pennsylvania state law where he claims that a sergeant at the county jail allowed another inmate who was sick with COVID-19 to work in an area occupied by the plaintiff, ultimately resulting in the plaintiff contracting COVID-19. The plaintiff also alleges that after becoming ill with COVID-19 and developing severe symptoms, the same sergeant and prison medical staff denied him adequate medical care.

After reviewing the application for leave to proceed *in forma pauperis* and screening the complaint under 28 U.S.C. § 1915(e)(2), the court will allow the plaintiff leave to proceed *in forma pauperis*. The court will also dismiss the plaintiff's section 1983 failure to protect claim against the sergeant because he has failed to state a plausible claim. The court will also allow the plaintiff's claims for deliberate indifference to serious medical needs claims against all defendants and his state-law negligence claim against the sergeant to proceed past statutory screening, and the court will direct service of these claims.

## I.     ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Osvaldo Pumba ("Pumba"), submitted an application for leave to proceed *in forma pauperis*, prisoner trust fund account statement, and complaint which the clerk of court docketed on May 23, 2022.[1] *See* Doc. Nos. 1–3. In the complaint, Pumba, who is currently incarcerated at the Lehigh County Jail ("LCJ"), names as defendants the following individuals associated with the LCJ: (1) Sergeant Keith Kowal ("Sergeant Kowal"); (2) Nurse Lilian Thomas ("Nurse Thomas"); (3) L.P.N. Jennifer Vendel ("LPN Vendel"); (4) L.P.N. Johana Sharpe ("LPN Sharpe"); and R.N. Elizabeth. *See* Compl. at ECF pp. 1–2, Doc. No. 2.

As for his factual allegations, Pumba alleges that on January 11, 2022, a pod worker on the restricted segregation unit was sick and tested positive for COVID-19. *See id.* at ECF p. 4. Despite the pod worker's illness, Sergeant Kowal permitted him to clean the clock without wearing a mask or other protective face covering. *See id.* Then, that night and into the next day, Pumba began to feel "very very sick," suffering from "nausea, strong headaches, body pain, irritation of [his] throat," and "coughing up blood." *Id.* Pumba then tested positive for COVID-19, and he alleges he contracted it from the pod worker after Sergeant Kowal negligently allowed the sick pod worker to clean the block without wearing a mask. *See id.*

After testing positive for COVID-19, Pumba requested nurses at LCJ to provide him with Tylenol or Motrin on numerous occasions. *See id.* at ECF p. 5. Despite knowing that Pumba

---

[1] Pumba has filed nine other complaints in this court. *See Pumba v. Lehigh Cnty. Jail, et al.*, Civ. A. No. 21-5585, Doc. No. 2; *Pumba v. Madrid, et al.*, Civ. A. No. 21-5639, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-134, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-137, Doc. No. 2; *Pumba v. Lehigh Cnty. Jail Admin., et al.*, Civ. A. No. 22-179, Doc. No. 2; *Pumba v. Maldonado, et al.*, Civ. A. No. 22-476, Doc. No. 3; *Pumba v. Miller, et al.*, Civ. A. No. 22-2050, Doc. No. 2; *Pumba v. Cmwlth. of Pa., et al.*, Civ. A. No. 22-2076, Doc. No. 3; *Pumba v. Knappenberger, et al.*, Civ. A. No. 22-2078, Doc. No. 3. This memorandum opinion addresses only Civil Action No. 22-2082.

     Additionally, for reasons unknown, Pumba filed a second application for leave to proceed *in forma pauperis* and prisoner trust fund account statement which the clerk of court docketed on June 16, 2022. *See* Doc. Nos. 5, 6. The court has considered both *in forma pauperis* applications and will collectively refer to them as the "IFP Application".

required medical assistance with the virus, Sergeant Kowal "refused to call the nurses" and "ordered the nurses" to not go to Pumba's cell or provide him with any medical treatment. *See id.* Pumba later talked to RN Elizabeth about getting treatment "because [his] medical need [wa]s serious," but she ignored him and refused to provide him with any treatment. *See id.*

Over the next few days, Pumba's symptoms worsened, with him experiencing a high fever, strong headaches, vomiting, and coughing up blood. *See id.* He showed Nurse Thomas that he was coughing up blood and vomiting on January 15, 2022, yet, she "refused and did not want to provide any medical treatment" for him. *See id.* Days later, when Pumba was still feeling sick, he asked LPN Vendel and LPN Sharpe for pain medicine for his symptoms. *See id.* They also refused to treat him, saying that they were following orders. *See id.*

Pumba alleges that by not receiving medical treatment, he experienced "substantial and unnecessary suffering." *Id.* He therefore asserts claims for Eighth Amendment violations under 42 U.S.C. § 1983 and a state-law negligence claim against Sergeant Kowal. *See id.* He seeks $20 million in damages.

## II.     DISCUSSION

### A.     The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files

a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Pumba is unable to prepay the fees to commence this civil action. Therefore, the court will grant him leave to proceed *in forma pauperis*.[2]

**B.   Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Pumba leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that

---

[2] As Pumba is a prisoner, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

"[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Shorter v. United States*, 12 F.4th

366, 374 (3d Cir. 2021) ("At this early stage of the litigation, we accept the facts alleged [in the *pro se*] complaint as true, draw all reasonable inferences in [the *pro se* plaintiff's] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." (citation, internal quotation marks, and all original alterations omitted)); *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("We construe Vogt's pro se filings liberally. This means we remain flexible, especially 'when dealing with imprisoned pro se litigants' like Vogt." (internal citations omitted) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013))); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). Yet, conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)).

Additionally, when reviewing and construing a *pro se* plaintiff's complaint, the court will "'apply the relevant legal principle even when the complaint has failed to name it.'" *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 244). However, *pro se* litigants "'cannot flout procedural rules— they must abide by the same rules that apply to all other litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## C.   Analysis

Pumba asserts that all the defendants violated his constitutional rights, and he is seeking monetary relief for those violations under 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege
and prove that a "person" deprived the plaintiff of a constitutional right while acting under color
of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff
must allege the violation of a right secured by the Constitution and laws of the United States, and
must show that the alleged deprivation was committed by a person acting under color of state
law.").

As set forth below, Pumba has stated plausible claims for deliberate indifference to his
serious medical needs against all defendants, as well as a state-law negligence Claim against
Sergeant Kowal. He has, however, failed to plausibly plead a constitutional claim against Sergeant
Kowal for his alleged failure to protect him from COVID-19.

1.     **Failure to Protect Against COVID-19 Claim Against Sergeant Kowal**

The court understands Pumba to be alleging that Sergeant Kowal, by permitting a COVID-
19 positive pod worker to clean his block without wearing a mask, failed to adequately protect
Pumba from COVID-19 exposure, which resulted in Pumba contracting the virus. To state a
plausible claim for failure to protect in the context of COVID-19, Pumba must allege facts to
support a plausible inference that the defendants confined him in conditions that amounted to
punishment or that the defendants were deliberately indifferent to his serious medical needs (*i.e.*,
his particular "vulnerability to COVID-19"). *See Hope v. Warden York Cnty. Prison*, 972 F.3d
310, 325 (3d Cir. 2020) (holding that there are two ways for pretrial detainee to state claim for
denial of substantive due process as it relates to COVID-19 exposure). To meet this standard, the
facts alleged must reflect either: (1) that the challenged conditions were imposed "for the express
purpose of punishment, and if not, whether they are rationally connected to a legitimate purpose

but excessive in relation to its purpose," *id.* at 328; or (2) that the "Government knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).

"The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in evaluating this context, courts must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken as constitutional rules "are not subject to mechanical application *in unfamiliar territory*." *Id.* at 330 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where a detention facility has taken concrete steps toward mitigating the medical effects of COVID-19, an incarcerated person will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus even though they cannot entirely "eliminate all risk" of contracting COVID-19, notwithstanding even serious preexisting medical conditions the prisoner may have. *See id.* at 330–31.

Here, Pumba alleges that Sergeant Kowal permitted a pod worker who tested positive for COVID-19 to clean Pumba's cell block without wearing a mask and presumably exposing Pumba to COVID-19. These allegations are insufficient to allege a plausible constitutional claim that Sergeant Kowal failed to adequately protect him from exposure to COVID-19. Pumba has not alleged that any conditions were excessive in relation to their legitimate purpose of managing the spread of the virus. Nor does he allege that Sergeant Kowal knew of and disregarded an excessive risk to his health and safety. Pumba's COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that Constitution does not require government to entirely eliminate risk of contracting COVID-19 in

correctional setting, stating "[plaintiffs] argue that the Government must eliminate entirely their risk of contracting COVID-19. That task is not the constitutional standard, however").

Pumba also specifically alleges that Sergeant Kowal should be liable under section 1983 because he was negligent.[3] *See* Compl. at ECF p. 4 ("I got positive from COVID-19 due to the pod worker spreading the virus and *the Sergeant*[*'s*] *negligence*." (emphasis added)). However, a claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. This reading of the Clause underlies our decision in *Estelle v. Gamble*, [429 U.S. 97, 105–106 (1976)], which held that a prison physician's 'negligen[ce] in diagnosing or treating a medical condition' did not suffice to make out a claim of cruel and unusual punishment. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." (second alteration in original)); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (per curiam) ("Here, the allegations contained in the amended complaint, taken as true, assert a simple negligence claim at most, and thus do not state a claim of a constitutional violation under the Eighth Amendment."); *see also Hope*, 972 F.3d at 329 ("Deliberate indifference requires significantly more than

---

[3] The court also understands Pumba to also be asserting a state-law negligence claim against Sergeant Kowal. To state a negligence claim, Pumba must allege: a legal duty, a breach of that duty, a causal relationship between the defendant's negligence and the plaintiff's injuries, and damages. *See City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002) (stating elements for cause of action for negligence). Because Pumba has stated a plausible state-law negligence claim against Sergeant Kowal and because his federal claims are proceeding to service, the court can exercise supplemental jurisdiction over the state-law negligence claim. *See* 28 U.S.C. § 1367(a) (providing for district courts' supplemental jurisdiction).

negligence."). Accordingly, the court will dismiss with prejudice Pumba's constitutional claim that Sergeant Kowal's negligence caused him to be exposed to COVID-19.[4]

### 2.      Deliberate Indifference to Serious Medical Need

Pumba alleges that all defendants failed to provide him with any medical treatment after he became ill from COVID-19. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted). A plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and

---

[4] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). Here, the court finds that any attempt by Pumba to amend this constitutional claim would be futile.

mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Pumba alleges that Sergeant Kowal ordered that no medical care be provided to Pumba and that the nurse defendants refused to provide Pumba with care despite being aware of Pumba's severe symptoms. Compl. at ECF p. 5. Pumba also asserts that the defendants' failure to provide any medical assistance to him resulted in him experiencing "substantial and unnecessary suffering." *Id.* Accordingly, Pumba states plausible deliberate indifference claims against Sergeant Kowal, Nurse Thomas, LPN Vendel, LPN Sharpe, and RN Elizabeth. These claims will be served for a responsive pleading.

## III.    CONCLUSION

For the foregoing reasons, the court will grant the IFP Application, dismiss with prejudice the Eighth Amendment failure to protect claim against Sergeant Kowal, and allow Pumba's section 1983 claims for deliberate indifference to serious medical needs against Sergeant Kowal, Nurse Thomas, LPN Vendel, LPN Sharpe, and RN Elizabeth and his state-law negligence claim against Sergeant Kowal to pass statutory screening. These latter claims will be served for a responsive pleading.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.